UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMBERLY-CLARK CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3: 05-CV- 2097-B |
| | § | ECF |
| FACTORY MUTUAL INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Having considered Plaintiff Kimberly-Clark Corporation's ("Kimberly-Clark") Claims for Attorneys' Fees and Costs (doc #108), the evidence submitted concurrently, all supplementary evidence and argument, and Defendant Factory Mutual Insurance Company's ("Factory Mutual") evidence and Responses to Plaintiff's submissions, the Court awards attorneys' fees in the amount of $235,440.80, in addition to the $16,688.63 in costs already taxed by the clerk of the Court, for the reasons stated herein.

## I. BACKGROUND

On September 21, 2007, the Court granted summary judgment for Plaintiff on its breach of contract claim against Defendant and awarded Plaintiff its attorneys' fees and costs (doc # 105). The Court denied Plaintiff's claims for violation of the Texas Insurance Code and granted summary judgment for Defendant Factory Mutual on those claims. Plaintiff filed a Claim for attorneys' fees and costs on October 24, 2007 and Defendant filed a Response thereto (docs # 108 and 113). Plaintiff's submission included highly redacted copies of hours billed and costs incurred by Plaintiff's

counsel Morgan Lewis. Defendant argued, *inter alia*, that Plaintiff should be required to segregate the fees and costs incurred in prosecuting its successful breach of contract claim–the basis for the award of attorneys' fees and costs–from work done to support Plaintiff's other claims and defenses. The Court agreed, in accordance with *Tony Gullo Motors I LP v. Chapa*, 212 S.W.3d 299, 310-314 (Tex. 2006), and ordered Plaintiff to supplement its original submission by providing unredacted copies of its bills and segregating its time by claim. *See* Memorandum Order dated March 19, 2008.

Although the Court already set forth the parties' arguments and provided its overall view of the relevant law in Texas on determining attorneys' fees in its March 19 Order, the Court will reiterate various points from that Order as necessary to fully explain its reasoning for the specific award provided herein.

Plaintiff asserts that the Court should calculate reasonable attorneys' fees by reference to its 35% contingency fee arrangement with its client–which it originally argued would result in an award of $1,059,016.73 plus costs of $37,014.82.[1] Plaintiff argues that its request for a 35% contingency fee is customary and reasonable, and indeed is presumptively so, and discusses its view of the application of the factors considered in determining the reasonableness of an award of attorneys' fees under Texas state law. *See Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). In support of its Claim, Plaintiff submits a declaration of its counsel Mr. Charles

---

[1] The contingency fee agreement defines "net recovery" as "the amount Kimberly-Clark receives from or on behalf of a defendant in the subject litigation … minus amounts equal to all costs and expenses [Kimberly-Clark has] paid or owing to Morgan Lewis or third party contractors … at the request of Morgan Lewis." (Malaret Decl., ¶ 2) Plaintiff arrived at its total requested fees and costs ($1,096,031.55) by subtracting costs of $37,014.82 from the Court's award of $3,062,776.90, taking 35 percent of that number and then adding back in the $37,014.82 of requested fees.

Malaret, which discusses counsel Morgan Lewis' qualifications and work done on this matter along with Plaintiff's fee arrangement and contingency fee agreements generally.

In response to the Court's March 19 Order, Plaintiff submitted a Supplemental Declaration from Mr. Malaret including counsel's opinion on the proper segregation of fees and costs incurred in prosecuting Plaintiff's breach of contract claim and increasing the attorneys' fees and costs Plaintiff seeks to $1,357,806.15 (fees) and $38,976.47 (costs). The increase in fees is based on the Court's award of pre-judgment interest to Plaintiff, which increased the base award to Plaintiff used by counsel to calculate its 35% contingency fee. The increase in costs is apparently due to work performed in association with Plaintiff's submissions for pre-judgment interest and attorneys' fees.

In response, Defendant argues that Plaintiff's requested award of a fee based on its contingency agreement is excessive and unreasonable and does not comport with *Andersen* and its progeny (doc #113). Defendant also objects to the amount of costs that Plaintiff requests in association with its attorneys' fees as unrecoverable under 28 U.S.C. §1920. In support of its response, Defendant submitted a declaration from its counsel Mr. Cook in which Mr. Cook discusses his practice, the relative complexity and time involved in addressing this matter, the rates charged by Morgan Lewis, and the standard hourly rates in Texas for similar legal services. Defendant also objects to the increase in the amount Plaintiff seeks in its supplemental submissions for its fees based on the award of pre-judgment interest.

## II. ANALYSIS

### Standard for Awarding Attorneys' Fees

An award of attorneys' fees "is governed by the same law that serves as the rule of decision for the substantive issues in the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Texas law provided the rule of decision in this case and also authorizes the award of attorneys' fees. Attorneys' fees in this matter are being awarded pursuant to Texas Civil Practice and Remedies Code section 38.001, which provides that a prevailing party "may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for...an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001 (Vernon 2007).

The burden of proving the reasonableness of attorneys' fees is on the party seeking them. *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). Texas law presumes "that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable." TEX. CIV. PRAC. & REM. CODE § 38.003 (Vernon 2007). However, the presumption of reasonableness may be rebutted. *Id.* In addition to hearing testimony and receiving other evidence, the court may take judicial notice of reasonable and customary fees along with the contents of the case file in evaluating a request for attorneys' fees. *See* TEX. CIV. PRAC. & REM. CODE § 38.004 (Vernon 2007); *Gill Savings Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex. 1990). *Cf. City of Fort Worth v. Groves,* 746 S.W.2d 907, 918 (Tex. App.–Fort Worth 1988, no writ) (observing that the court can draw on its own experience as a lawyer and a judge and must look at the entire record to determine a reasonable fee).

The Texas Supreme Court has established several factors to be used in considering the reasonableness of a requested fee amount:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;
>
> (2) the likelihood … that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). While it should be considered, a contingency fee arrangement is only one of several factors to be assessed.

"A contingent fee may indeed be a reasonable fee from the standpoint of the parties to the contract. But, we cannot agree that the mere fact that a party and a lawyer have agreed to a contingent fee means that the fee arrangement is in and of itself reasonable for purposes of shifting that fee to the defendant." *Andersen*, 945 S.W.2d at 818; *see also Rauscher Pierce Refsnes, Inc. v. Koenig*, 794 S.W.2d 514, 516 (Tex. App.–Corpus Christi 1990, writ denied) (noting that counsel's contingency fee arrangement was not determinative of the amount of fees he could recover).

Under Texas law, compensation for a paralegal or legal assistant's work may be included in the award for attorneys' fees if the paralegal or legal assistant performed work that has traditionally been done by any attorney. *Gill Sav. Ass'n v. Int'l Supply Co.*, 759 S.W.2d 697, 702 (Tex. App.-Dallas 1988, writ denied). To recover such amounts, however, evidence must be presented of the following:

(1) the legal assistant is qualified through education, training or work experience to perform substantive legal work;

(2) substantive legal work was performed under the direction and supervision of an attorney;

(3) the nature of the legal work which was performed;

(4) the hourly rate being charged for the legal assistant; and

(5) the number of hours expended by the legal assistant.

*Gill*, 759 S.W.2d at 702. The party seeking to recover attorneys' fees for work done by paralegals and legal assistants bears the burden of producing evidence on these elements. *All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 504 (Tex. App.–Texarkana 2005, no pet.) (excluding legal assistant fees where there was no evidence other than the hourly rate and hours expended); *Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.–Fort Worth 1997, pet. denied) (affirming trial court exclusion of legal assistant fees where there was no evidence as to the assistant's qualifications); *Moody v. EMC Servs., Inc.*, 828 S.W.2d 237, 248 (Tex. App.–Hous. [14th Dist.] 1992, writ denied) (denying attorneys' fees for paralegal work when evidence did not establish qualifications, work performed, hourly rate, and hours worked by paralegal).

## Application of the *Andersen* factors

The parties have submitted evidence concerning most of the *Andersen* factors and the reasonableness of Plaintiff's request for attorneys' fees, which the Court considers in turn.

Both parties submitted evidence concerning the first *Andersen* factor: the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly. The time and labor required is evidenced in Plaintiff's monthly billing, submitted in redacted form with the Malaret Declaration and in unredacted form (to the Court) with the Supplemental Malaret Declaration. Plaintiff submitted monthly invoices for services rendered by counsel from case inception through February 15, 2008. The total hours billed by all time keepers, which included attorneys, paralegals, document clerks, librarians, and bi-weekly employees, are 1000.50. (Supp. Malaret Decl. Ex. A).

<u>Time and Labor: Fee Segregation</u>

Plaintiff has attempted to segregate its fees by claim as ordered by the Court and has subtracted certain line entries from the invoices submitted, which Mr. Malaret describes as the work attributable solely to the non-contract claims. (Supp. Malaret Decl. ¶6 and Ex. B). Mr. Malaret testifies, based on his knowledge of this matter and his supervision of the work performed, that no additional time prior to the filing of the Complaint[2] is attributable to any claims other than breach of contract.[3] (Supp. Malaret Decl. ¶7). Mr. Malaret further testifies that, in addition to the amounts subtracted as line items, there was other work performed that should be solely attributed to non-contract claims. (*Id.*). Mr. Malaret attests that a total of approximately 15% of the work done from the time the Complaint was filed through the grant of summary judgment should be attributed to the non-contract claims. (*Id.*).

Defendant, who has not had the benefit of reviewing unredacted copies of Plaintiff's billing, presents several arguments that the non-contract claims constituted more than 10-15% of the total time billed. Defendant argues that, in addition to breach of contract, Plaintiff originally brought claims based on at least five other legal theories, all of which Plaintiff pursued throughout discovery and at least until October 5, 2006 when a Stipulation of Partial Dismissal was submitted. Discovery

---

[2]The Court notes that although both parties refer to the live pleading containing Plaintiff's allegations as the "Complaint," that document was originally filed in state court before the case was removed to federal court. Thus, the operative original pleading was a Petition. However, for ease of reference and consistent with the parties, the Court will refer to the document as the Complaint.

[3]Mr. Malaret's testimony is internally inconsistent, as his discussion in the section of his Declaration labeled "Pre-Complaint Investigation and Filing of Complaint" states that he believes that 10% of the work done during this phase of the case is attributable to non-contract claims, but the date he uses for the filing of the Complaint is December 14, 2005. (Supp. Malaret Decl. ¶ 7). The Complaint was filed on September 30, 2005. The line items Mr. Malaret attributes to non-contract claims prior to September 30 actually represent about 30% of the time billed pre-filing.

was directed to facts to support each of those claims (fraud, negligent misrepresentation, unjust enrichment, and violations of the Texas Insurance and Business & Commerce Codes), all of which require proof of different elements than breach of contract. Defendant also asserts that breach of contract was largely a legal claim and that Plaintiff had most of the information it needed to prosecute that claim when it filed the Complaint. Thus, Defendant argues that Plaintiff's claim that 85% of its time was attributable to the breach of contract claim is not supported by the actual activity in this matter. Defendant suggests that attributing 60-65% of the time to the contract claim is more appropriate in this case.

The Court has reviewed the unredacted monthly invoices submitted by Plaintiff in their entirety. The Court notes that, with the exception of some of the line items identified by Mr. Malaret,[4] in general the descriptions of tasks entered as line items in Plaintiff's bills are so generic that it is virtually impossible to determine whether part or all of the time for any given entry was in support of Plaintiff's successful breach of contract claim or solely in support of one of its other non-contract claims. For example, there are very few instances in which any time entry refers to a specific claim. Most entries follow the same form as several entries on the first invoice submitted, such as "Research legal issues for complaint; draft the same, Provide instruction on research and drafting of

---

[4]The Court accepts all of the line item segregations that Mr. Malaret identifies as work performed exclusively on non-contract claims. (Supp. Malaret Decl. Ex. B). The Court also identifies three time entries for Mr. Malaret dated October 3, 4, and 5, 2006, one entry for Mr. Salisian dated January 8, 2007, and part of one entry for Ms. Bernstein dated January 17, 2007 as related solely to non-contract claims. *See* Supp. Malaret Decl. Ex. E at Invoice Nos. 1032997 and 1068065. The Court will subtract these entries totaling $3493 (2.2 hours of time valued at $1300 plus 2.2 hours valued at $693 plus 2.5 hours valued at $1500), along with those summarized in Exhibit B, before awarding fees.

complaint, and Research legal issues for complaint; draft the same".[5] (Supp. Malaret Decl. Ex. D, Invoice No. 905695 at p. 1).[6] Thus, given the generic nature of the time entries, the Court relies on Mr. Malaret's testimony as partner in charge of this matter, as well as the other evidence on file and the record in this matter in determining the appropriate amount of time to allocate to the successful breach of contract claim. TEX. CIV. PRAC. &REM. CODE §38.004.

The Texas Supreme Court commented in *Chapa* that many standard services performed during a representation would be performed even if unrecoverable claims had not been asserted. *Chapa*, 212 S.W.3d at 313. Thus, if "the services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service." *Id.* (citing examples of services like requests for disclosures, depositions, discovery motions and hearings). However, as the Court noted in *Varner*, "[i]n *Chapa*, we reestablished the rule that attorney's fees are recoverable only if necessary to recover on a contract or statutory claim allowing them, and eliminated the exception for fees incurred solely on separate but arguably intertwined claims." *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007). Thus, while the Court recognizes that a considerable amount of the work done by Plaintiff would have been necessary even if it was only prosecuting a breach of contract claim, the

---

[5]The Court observes that while Plaintiff originally produced its invoices in a highly redacted form claiming privilege, there is virtually nothing in the invoices to support such a claim given the genericness of the entries.

[6]The Court recognizes that the referenced invoices are not actually attached to the Supplemental Malaret Declaration, as they were produced for *in camera* review only. However, the Supplemental Malaret Declaration does contain a summary of the invoices and for ease of reference, the Court has matched the actual invoices to the corresponding relevant particular paragraphs and exhibits to the Supplemental Malaret Declaration and therefore cites the appropriate paragraphs/exhibit as though the invoices were actually attached thereto.

Court finds that the amount of time that should be allocated to that claim to be less than the time allocated by Mr. Malaret.

The Court does consider Mr. Malaret's testimony that 15% of the time spent from the filing of the suit through summary judgment should be allocated to non-contract claims as evidence of the proper segregation of fees between recoverable and non-recoverable claims. *See Chapa,* 212 S.W.3d at 314 (noting that opinion testimony that 95% of the time spent drafting a petition was for recoverable claims would be sufficient proof to support claim for attorneys' fees). However, the Court notes that Mr. Malaret has allocated 30% of the time spent prior to the filing of the lawsuit to non-contract claims, yet only allocates 15% of the time spent prosecuting the suit to non-contract claims. For several reasons, the Court finds that the record supports using 30% as a more appropriate measure for segregating fees for line item billing entries that are otherwise too generic on their face to allocate between the contract and non-contract claims. *See Hartis v. Century Furniture Indus., Inc.,* 230 S.W.2d 722, 737-738 (Tex. App.–Hous. [14th Dist.], no pet.) (adjusting attorneys' fees stipulation by the parties noting that the "court is not bound by stipulation or uncontroverted evidence regarding attorneys' fees").

First, there is no evidence that the relative percentage of time spent prosecuting non-contract claims was less than the relative percentage of time spent preparing for filing non-contract claims. Plaintiff filed five non-contract claims and prosecuted all of them through discovery. The Court notes that the parties did not argue that the contract was ambiguous. As is apparent from the parties' briefing on summary judgment, the contract claim was largely a legal issue, such that it is unlikely that substantial time was or should have been dedicated to it during discovery. Thus, although some of the discovery pursued surely supported the contract claim as well as other claims,

it is likely that a large percentage of the discovery pursued was used solely to discover and support non-contract claims. Considering that Mr. Malaret testified that 30% of the time spent pre-suit was dedicated to non-contract claims and none of those claims were dropped until after discovery was complete, using a similar percentage to segregate post-filing time is supported by the record and the Court's experience.

Second, after the parties entered a stipulation of dismissal, Plaintiff then filed summary judgment on the remaining contract claim and the claims for unjust enrichment and violations of certain aspects of the Texas Insurance Code. Plaintiff also had to defend against the summary judgment motion filed by Defendant on all claims, including the non-contract claims. The Court takes notice that about 25% of Plaintiff's briefs in support of its own summary judgment and opposing Defendant's summary judgment concerned non-contract claims. Although the pages devoted in a brief to certain claims may not entirely accurately reflect the time devoted to considering, compiling research, evidence, and writing the argument for those claims, it is some evidence to support the proper segregation of time between contract and non-contract claims. *See Gill Savings Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex. 1990) (holding that court's ability to take judicial notice of the record of the trial court proceedings reflecting the complexity of the case was some evidence to support fee award).

Third, Mr. Malaret's testimony indicates that he believes it appropriate to segregate the same amount for work performed on non-contract claims during discovery as during the preparation of the summary judgment motion and response. (Supp. Malaret Decl. ¶ 7). Thus, the Court finds no reason to reduce the percentage of time segregated for summary judgment related work compared to earlier work in this matter. Considering the case file and the evidence of segregation submitted,

the Court finds that 30% of the time billed by Plaintiff's counsel is properly attributable to non-contract claims.

####### Time and Labor: Non-Attorney Time

As discussed above, time billed and work performed by non-attorneys can only be compensated as part of an award of attorneys' fees if, *inter alia*, the work is substantive legal work that has traditionally been done by any attorney. *Gill*, 759 S.W.2d at 702. Further, there must also be evidence of the hours billed, hourly billing rate, nature of the work, and the qualifications of the non-attorney to perform such work. Plaintiff's bills show 101.40 hours billed by non-attorneys, the hourly billing rate of each person, and the nature of the work (at least to the extent that the generic description allows). However, there is no evidence of the qualifications of any non-attorney, and in particularly of any paralegal, to perform the work billed. Moreover, even if there was evidence of the qualifications of the non-attorneys, much of the work billed appears clerical–not legal–in nature.

The Court considers the following tasks to be clerical or non-legal: calendaring, organizing documents, reviewing correspondence, updating files and binders, copying documents, loading and organizing computer databases (such as Summation/Ringtail/Concordance), and mailing or delivering documents. Examples of tasks that the Court considers to be "substantive legal work" are: contacting state agencies to request information, drafting deposition notices or trial subpoenas, and drafting most documents that will be filed with the Court. While these lists are by no means exclusive, they should give the parties an idea of the distinction the Court draws between clerical work and legal work. With that in mind, the Court turns to the work performed by the non-attorneys for Plaintiff.

Plaintiff's bills list the following individuals as non-attorneys: M.I. Dupuis (Devey) (paralegal), D. Godfrey (paralegal), V.V. Loudon (document clerk), A. Atenor (document clerk), V.S. Aguilar (document clerk), V.G. Brusca (librarian), W.E. Flanagan (biweekly employee), and J.E. Ayoub (biweekly employee). The Court has reviewed the time entries for each of these individuals and finds that none of the time entered by Loudon, Atenor, Aguilar, Brusca, Flanagan, and Ayoub is compensable as attorneys' fees. Plaintiff has submitted no evidence that any of those individuals have the skills necessary to perform substantive legal work, nor are such skills implied by their titles. Further, all of the time entries for Loudon, Atenor, Aguilar, Brusca, Flanagan, and Ayoub show either that their work was clerical in nature or its true nature was indiscernible. *See* Supp. Malaret Decl. ¶7, Ex. D (associated Invoice Nos. 936397, 975024, 991501, 1014241, and 1023330 (listing tasks like delivering subpoenas, assisting with organizing documents, and indexing documents)) and Ex. E (associated Invoice No. 1068065 ((listing tasks like "review brief" and "obtain copies of cases")). Plaintiff has not met its burden to show that these fees submitted are recoverable as attorneys' fees. *All Seasons*, 181 S.W.3d at 504.

Upon consideration of paralegal time billed by Godfrey and Dupius (formerly Devey), the Court finds the following entries compensable as attorneys' fees, as the work appears legal in nature. Where appropriate, the Court has reduced the amount considered as hours billed for the purpose of computing attorneys' fees, as the substantive legal work was block-billed with clerical work in a manner that made it impossible for the Court to determine exactly how much time was spent on the legal tasks versus the non-legal tasks. Although no evidence was submitted by Plaintiff as to the qualifications of its paralegals to perform substantive legal work, in its discretion, the Court takes

judicial notice of the training and experience of typical paralegals in large law firms in addition to the fact that counsel obviously trusted the paralegals to perform the legal work.

| Date | Name | Description | Hours Billed | Hourly Rate |
|------|------|-------------|--------------|-------------|
| 12/13/05 | Devey | Prepare redacted documents for production; prepare privilege log/redaction log | 1.0 (out of 2.10 billed) | 180.00 |
| 03/29/06 | Devey | Prepare final version of redacted documents; review and revise privilege log; prepare email to C. Malaret regarding same | 1.0 (out of 1.5 billed) | 240.00 |
| 03/31/06 | Devey | Review and revise final version of redacted document; review and revise privilege log; review and revise correspondence to opposing counsel | .2 (out of .5 billed) | 240.00 |
| 04/07/06 | Godfrey | Telephone conference with C. Malaret regarding case and upcoming document review at Kimberly Clark; email correspondence with V. Worrell regarding documents needed for review; review complaint and Factory Mutual's discovery requests to Kimberly Clark | 3.5 | 195.00 |
| 04/10/06 | Devey | Review protective order; prepare email to D. Godfrey regarding production of documents | .3 | 240.00 |
| 04/10/06 | Godfrey | Review draft discovery responses; prepare for and attend document review at Kimberly Clark; email to and telephone conference with M. Devey regarding Bates numbering; telephone conference with vendor regarding production; email to C. Malaret regarding same | 4.5 | 195.00 |
| 04/18/06 | Godfrey | Telephone conference with N. Salisian regarding review of Factory Mutual documents; email to M. Devey regarding Kimberly Clark's interrogatories and request for production to Factory Mutual and review of same | .8 | 195.00 |

| 04/20/06 | Godfrey | Preparation for review of Factory Mutual documents, including review of Kimberly Clark's discovery requests to Factory Mutual | 1.5 | 195.00 |
|---|---|---|---|---|
| 04/21/06 | Godfrey | Prepare with N. Salisian for review of Factory Mutual documents; to offices of T. Cook for document review | 4.3 | 195.00 |
| 06/06/06 | Devey | Review privilege documents and prepare privilege/redaction log for J. Raskin; prepare email regarding same | 2.0 | 240.00 |
| 08/01/06 | Devey | Review and compile documents references in letter from defence [sic] counsel regarding productions; prepare letter to client forwarding same; review and revise redaction log | 1.0 (out of 3.0 billed) | 240.00 |
| 08/23/06 | Devey | Conference with C. Malaret regarding hot docs | .5 | 240.00 |
| 08/29/06 | Devey | Review correspondence from defense counsel; compile documents and privilege log | .5 | 240.00 |
| 10/26/06 | Devey | Review and organize documents to stipulation of facts; prepare index of documents to stipulation for C. Malaret | 3.0 | 240.00 |
| 10/31/06 | Devey | Review and finalize documents to stipulation of facts for C. Malaret | 1.0 | 240.00 |
| 11/06/06 | Devey | Review and compile documents to defense counsel's joint stipulation of facts | 2.0 | 240.00 |
| 11/07/06 | Devey | Review productions by defense counsel; review and compile documents to joint stipulation of facts | 2.0 | 240.00 |
| 11/09/06 | Devey | Review and compile final set of exhibits to joint stipulation of facts; prepare same for C. Malaret and N. Salisian | 2.5 | 240.00 |
| 11/13/06 | Devey | Review FM's production for evidence of profitability for C. Malaret; review and revise exhibit list | 3.5 | 240.00 |

Thus, of the 77.20 hours of work performed by paralegals included by Plaintiff in its monthly invoices, the Court finds that 35.1 of the hours qualify as attorneys' fees under Texas law. The fees generated by those hours total $7707.00.

Novelty and Difficulty of the Question/Skills Required to Perform:

Plaintiff submitted evidence that this case presented complex issues of insurance coverage but also states that counsel is highly skilled in insurance recovery litigation and business disputes. (Malaret Decl. ¶¶ 4 and 9). While the case may have been complex, there is evidence that the parties addressed the matters in a streamlined fashion–taking only written discovery with no depositions or hearings, agreeing on joint stipulations of facts and exhibits to be submitted to the Court, as well as agreeing to dismissal of certain claims without briefing them. (Cook Decl. ¶ 6). The Court finds that the hours billed by Plaintiff, as reflected on the invoices submitted *in camera* and as segregated by Plaintiff and the Court, accurately account for the novelty and difficulty of the issues related to the breach of contract claim.

The Court similarly finds that the skill of the attorneys handling this matter is accurately reflected in Plaintiff's billing with one exception. The Court notes that although a junior associate (Mr. Salisian) handled the legal research related to all claims from inception of the case through summary judgment, during summary judgment a senior attorney (Ms. Bernstein) began performing legal research in conjunction with drafting the summary judgment briefing and responding to Defendant's summary judgment briefing. While the Court recognizes that it may have been reasonable to add an attorney to the matter at that point and therefore gives Plaintiff the benefit of the doubt as to the reasonableness of fees incurred to get Ms. Bernstein up to speed on the case, the Court does not find it reasonable for someone with Ms. Bernstein's seniority, and presumably with

commensurate skills, to perform legal research. Based on the Court's knowledge of attorneys' fees in the Dallas area, it is not reasonable, usual, or customary for any attorney to charge $600/hour to do legal research. Plaintiff has submitted no evidence to the contrary. Thus, because Ms. Bernstein's time is block billed such that the Court cannot accurately assess how much time in any one entry was dedicated to legal research, the Court will reduce the rate billed by Ms. Bernstein to the equivalent rate for junior associate Mr. Salisian ($265 and $315) for half of the time in all entries in which legal research is part of the block billing. (Supp. Malaret Decl. Ex. E at Invoice 105041 (December 8, 11, 18, 19, 21, 28, and 29, 2006 entries) and Invoice 1068065 (January 2, 3, 4, 5, 23, 24, and 25, 2007 entries)).

Other *Andersen* Factors:

In considering the remaining *Andersen* factors, the Court finds that most of the factors are addressed by the billing rate and hours billed as reflected in Plaintiff's invoices, with the caveats above. The Court assumes that the rates commonly charged by Plaintiff in an hourly billing case take into account the fact that accepting employment on any particular matter will necessarily limit the attorneys' ability to accept other cases, or as many other cases as they might be offered or would ideally like to pursue. The hourly rates reflected in Plaintiff's monthly bills are high, but not out of line with the rates charged by other firms for similar services in the Dallas area. (Cook Decl. ¶ 4). The amount in dispute in this matter was relatively small, and Plaintiff achieved success on one of its claims and agreed to dismiss several others. These facts appear to be accurately reflected in the number of hours billed on various phases of this case. However, the ratio of the recovery in this matter ($3.9 million) to the requested attorneys' fees ($1.37 million) is high, particularly considering only 901 hours were billed to the matter through summary judgment for *all* claims. The resulting

average hourly rate if the Court were to award the requested amount of fees for the hours billed by attorneys only on contract claims (approx. 70% of the 901 hours) is exorbitant ($2,174/hour). There is no evidence that there was any particular time or client pressure in this matter to warrant an upward or downward departure from the hourly rates. There is evidence of a long-standing client relationship between Plaintiff and its counsel. (Malaret Decl. ¶ 8). This relationship does not bear either way on the reasonableness of the requested amount of fees, as it is arguable that counsel is willing to take the risk of a contingency fee arrangement, because it knows that more work/cases will likely follow to allow it to make up for any potential loss on any given case. It is equally arguable that counsel is willing to take on the risk because it has been successful on previous contingency cases for Plaintiff and has been paid fees far in excess of its hourly billable hour rate on those cases (as it now requests the Court to award). Plaintiff's historical relationship with its counsel and their fee agreements does not imply that the fee request is reasonable as applied to having a third party pay it. Except as discussed above, there is no evidence that the experience and abilities of the attorneys working on the matter is not accurately reflected by their billing rates and the number of hours billed.

<u>Existence of a Contingency Fee Agreement</u>

Fundamentally, Plaintiff seeks an award of fees pursuant to its contingency fee agreement with its counsel, which essentially provides that counsel will be paid 35% of any recovery, net of costs and expenses, but including pre and post-judgment interest. (Malaret Decl. ¶ 2). Plaintiff argues that the existence of its contingency fee agreement, along with its counsel's testimony that a contingency fee agreement of 35-40% is typical for insurance recovery matters of this nature, means that a recovery of $ 1,371,447.90 ($3,918,422.60 times 35%) is presumptively usual and customary under Texas Civil Practice and Remedies Code section 38.003. (Malaret Decl. ¶ 6). Even assuming

that counsel's self-serving testimony is sufficient to demonstrate that a 35% contingency is "usual and customary" under section 38.003, the Court finds that, upon consideration of the *Andersen* factors discussed above, the presumption has been rebutted under the facts of this case.

The other *Andersen* factors show that this matter was tried in a straight-forward way, with cooperation and joint stipulations of both parties, by counsel who are experienced in this area of the law, however complex it may be. Further, Plaintiff's counsel kept track of time billed by the hour and sent such bills to Plaintiff on a monthly basis, which, under the parties' contingency fee agreement, were agreed to create a presumption between counsel and Plaintiff that the fees and expenses set forth therein were reasonable and necessary. *See* agreement submitted *in camera* for court review. Not only does the Court independently find that the hours billed at the hourly rates shown on the monthly invoices are reasonable and customary in the Dallas area and appropriate based on the amount in controversy and novelty of the issues, the parties' own agreement reinforces that finding. The Court does not find that the fact that a contingency fee agreement exists overrides the other *Andersen* factors, particularly in this case where an award of attorneys' fees in the amount requested would result in a windfall to Plaintiff's counsel. Defendant cannot be, and is not, expected to pay for the private risks allocated between Plaintiff and its counsel in entering into a contingency fee arrangement where the resulting fee is unreasonable in light of the circumstances of the case.

## Calculation of the Attorneys' Fees Award

Based on the invoices submitted by Plaintiff, modified as discussed above, the Court calculates the attorneys' fees awarded to Plaintiff as follows. The Court notes that although Plaintiff has submitted invoices for time billed through February 2008, summary judgment on its contract claim was granted on September 21, 2007. The Court finds no basis in section 38.001 of the Texas

Practice and Remedies Code–the statutory basis for its award of reasonable attorneys' fees–to support an award of fees incurred after that date.

Time billed on all claims (case inception through summary judgment):[7]

| Time Keeper | Hours | Rate Billed ($$) | Total ($$) |
| --- | --- | --- | --- |
| C.J. Malaret | 29.2 | 605 | 17,666 |
| | 140.4 | 650 | 91,260 |
| | 48.3 | 695 | 33,568.5 |
| J.R. Selinger | 2.3 | 620 | 1,426 |
| | 1.4 | 700 | 980 |
| T.K. Brown | 39.1 | 245 | 9,579.5 |
| N. Salisian | 40.8 | 245 | 9,996 |
| | 181.4 | 265 | 48,071 |
| | 2.4 | 315 | 756 |
| T.G. Ackermann | 2 | 415 | 830 |
| | 2.5 | 435 | 1,087.5 |
| L.M. Campisi | 9.6 | 540 | 5,184 |
| M. Bernstein | 96 (of 111.5) | 600 | 57,600 |
| | 15.5 | 265 | 4,107.5 |
| | 59.9 (of 89.7) | 620 | 37,138 |
| | 29.8 | 315 | 9,387 |
| D. Godfrey | 14.6 | 195 | 2,847 |
| M. Devey | 1 | 180 | 180 |
| | 19.5 | 240 | 4,680 |

---

[7]Includes adjustments only counting paralegal time billed that the Court found equivalent to attorney time under Texas law and discounting M. Bernstein billing rate for time spent performing legal research, as explained above.

|  |  |  |  |
|---|---|---|---|
|  |  |  |  |
|  |  | **Total Fees for all claims:** | $ 336,344.00 |

As discussed above, the Court will award 70% of the total attorneys' fees billed as reasonable attorneys' fees under Texas Civil Practice and Remedies Code section 38.001 *et seq.* in order to segregate fees attributable only to non-contract claims out of the award. The Court subtracts the line items identified by Mr. Malaret in Exhibit B to his Supplemental Declaration ($23,563.50) as well as line items it independently identified as non-contract related ($3,493) (see fn. 4) and an additional amount ($73,846.70) for a total amount subtracted of $100,903.20 (30% of $336,344 ). Thus the Court awards Plaintiff $235,440.80 as reasonable attorneys' fees.

## Costs

Plaintiff originally requested that the Court award costs of $37,014.82. Of the costs requested, $16,688.63 has now been taxed via Plaintiff's Bill of Costs submitted to the clerk of the Court on April 18, 2008 (docs #123-124). Thus, the Court decides only whether the remaining "costs" of $20,326.19, that cannot be taxed under 28 U.S.C. §1980, should also be awarded. The Court finds that Texas law does not support the award of non-taxable costs under Texas Civil Practice and Remedies Code section 38.001. *Flint & Assocs. v. Intercont'l Pipe & Steel,* 739 S.W.2d 622, 626-627 (Tex. App–Dallas 1987, writ denied) (holding that section 38.001 does not allow award of non-taxable costs unless such fees are included as part of reasonable legal fees (*i.e.*, accounted for by the hourly rate billed)); *see also Sparks v. Baxter*, 854 F.2d 110 (5th Cir. 1988) (*citing Id.*). Thus, the non-taxable costs requested by Plaintiff will not be awarded.

## III. CONCLUSION

For the reasons discussed above, the Court awards $235,440.80 as reasonable attorneys' fees for its successful breach of contract claim under Texas Civil Practice and Remedies Code section 38.001 and $16,688.63 of costs already taxed by the clerk of the Court.

SO ORDERED.

SIGNED April 30th 2008.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE